UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMAL WESTLEY                                          CIVIL ACTION

VERSUS                                                 NO. 18-1994

DARREL VANNOY, WARDEN                                  SECTION: "B"(1)

## REPORT AND RECOMMENDATION

Petitioner, Jamal Westley, a Louisiana state prisoner, filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

On May 24, 2013, petitioner was convicted of two counts of simple burglary of an inhabited dwelling and one count of each of the following offenses: forcible rape; access device fraud; armed robbery; and aggravated burglary.[1] On June 18, 2013, he was sentenced as follows: twelve years on each count of simple burglary of an inhabited dwelling; forty years on the forcible rape conviction; six months on the access device fraud conviction; fifty years on the armed robbery conviction; and thirty years on the aggravated burglary conviction. It was ordered that all sentences be served concurrently.[2] On August 15, 2013, he pleaded guilty to being a second offender and resentenced as such on the armed robbery conviction to a concurrent term of ninety-nine years imprisonment.[3]

On May 22, 2016, petitioner filed an application for post-conviction relief with the state district court requesting that he be granted an out-of-time appeal.[4] That application was denied as

---

[1] State Rec., Vol. 1 of 3, minute entry dated May 24, 2013.
[2] State Rec., Vol. 1 of 3, minute entry dated June 18, 2013.
[3] State Rec., Vol. 1 of 3, minute entry dated August 15, 2013; State Rec., Vol. 1 of 3, guilty plea form.
[4] State Rec., Vol. 2 of 3. Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to this *pro se* application, the Court will simply use the signature

untimely on July 14, 2016,[5] and the Louisiana Fourth Circuit Court of Appeal likewise denied him relief on September 1, 2016.[6]  On February 9, 2018, Louisiana Supreme Court then denied his related writ application, holding:  "The application was not timely filed in the district court, and relator fails to carry his burden to show that an exception applies.  La.C.Cr.P. art. 930.8; State *ex rel.* Glover v. State, 93-2330 (La. 9/5/95), 660 So.2d 1189."[7]

On or after February 19, 2018, petitioner filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254, claiming that his counsel was ineffective for failing to file a direct appeal.[8]  The state thereafter filed a response arguing that petitioner's application is untimely.[9]  The state is correct.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

date of the application as the filing date, in that the application was obviously placed in the mail no earlier than the date it was signed.
[5] State Rec., Vol. 3 of 3, Judgment dated July 14, 2016.
[6] State v. Westley, No. 2016-K-0835 (La. App. 4th Cir. Sept. 1, 2016); State Rec., Vol. 3 of 3.
[7] State *ex rel.* Westley v. State, 235 So. 3d 1097 (La. 2018); State Rec., Vol. 3 of 3.
[8] Rec. Doc. 4.  "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).  That date is not apparent from the record; however, the memorandum accompanying the application was dated February 19, 2018. Rec. Doc. 4-1, p. 22.
[9] Rec. Doc. 14.

>   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Subsections B and C of 28 U.S.C. § 2244(d)(1) obviously do not apply here because petitioner's claim involves neither a state-created impediment nor a newly-recognized constitutional right. Moreover, the Court finds that petitioner's application is untimely under either Subsection A or D.

If Subsection A applies, then petitioner's federal application is clearly untimely. As noted, under that subsection, the AEDPA's statute of limitations commences on the date a petitioner's state court judgment becomes final. For AEDPA purposes, a state court criminal judgment consists of the conviction and the sentence, and the judgment is therefore not considered "final" until both the conviction and the sentence are final. See Burton v. Stewart, 549 U.S. 147, 156-57 (2007); Scott v. Hubert, 635 F.3d 659, 665-67 (5th Cir. 2011).

With respect to determining the date of finality, the United States Fifth Circuit Court of Appeals has explained:

>   The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). *However, "[i]f the defendant stops the appeal process before that point," … "the conviction becomes final when the time for seeking further direct review in the state court expires."* Id. *at 694; see also* Foreman v. Dretke, *383 F.3d 336, 338 (5th Cir. 2004) (Section*

> *2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).*
>
> *Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.*

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (emphasis added).

Petitioner was sentenced on the multiple bill of information on August 15, 2013. Because he did not file a direct appeal within the thirty days allowed by state law, his state court criminal judgment then became final no later September 16, 2013.[10] Accordingly, his period in which to file his federal application for habeas corpus relief commenced under Subsection A on that date and expired one year later on September 16, 2014, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, petitioner had no such applications pending before the state courts at any time during the applicable one-year period ending on September 16, 2014. Therefore, he clearly is not entitled to statutory tolling.[11]

---

[10] Under Louisiana law, a criminal defendant has thirty days to file a motion to appeal his conviction or sentence. La. Code Crim. P. art. 914. Because the thirtieth day here fell on a Saturday, petitioner had until Monday, September 16, 2013, to file an appeal. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

[11] Although petitioner subsequently filed a post-conviction application in 2016, applications filed after the expiration of the federal statute of limitations have no bearing on § 2244(d)(2) tolling determinations. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put: once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

4

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "equitable tolling is unavailable in most cases …." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in *rare and exceptional* circumstances" (emphasis added)). Indeed, "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (internal quotation marks omitted). Regarding the two prongs of the Holland test, the United States Supreme Court has explained:

> [W]e have expressly characterized equitable tolling's two components as "elements," not merely factors of indeterminate or commensurable weight. Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements"). And we have treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other. See, e.g., Lawrence v. Florida, 549 U.S. 327, 336-337, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (rejecting equitable tolling without addressing diligence because habeas petitioner fell "far short of showing 'extraordinary circumstances'"); Pace, *supra*, at 418, 125 S.Ct. 1807 (holding, without resolving litigant's argument that he had "satisfied the extraordinary circumstance test," that, "[e]ven if we were to accept [his argument], he would not be entitled to relief because he has not established the requisite diligence").

Menominee Indian Tribe of Wisconsin v. United States, 136 S. Ct. 750, 756 (2016).[12] A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

---

[12] Menominee Indian Tribe was not a habeas corpus case. However, its equitable tolling discussion is expressly based on the Supreme Court's interpretation of Holland; therefore, the reasoning therein is applicable to habeas cases. See, e.g., Brian R. Means, Federal Habeas Manual § 9A:83 (2018).

5

Liberally construed, petitioner's application appears to argue that he should be granted equitable tolling because he was misled by his attorney who falsely represented that he would file a direct appeal in the state criminal proceeding.  In Holland, the United States Supreme Court held that "serious instances of attorney misconduct" can warrant equitable tolling.  Holland, 560 U.S. at 652.  Moreover, the United States Fifth Circuit Court of Appeals has held that "[a]n attorney's intentional deceit could warrant equitable tolling … if the petitioner shows that he reasonably relied on his attorney's deceptive misrepresentations."  United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002) (citing United States v. Wynn, 292 F.3d 226 (5th Cir. 2002)).

Here, however, petitioner has failed to meet his burden to prove that such deceit occurred in this case.  Although he states that his "trial counsel told him that he would file the motion for appeal,"[13] he has presented no evidence whatsoever to support that allegation.  For example, he has not presented an affidavit from counsel conceding that he made such a statement, an affidavit from a third person who overheard the conversation in which counsel allegedly stated that he would file an appeal, a contract showing that counsel had been retained to file an appeal, or even any correspondence between counsel and himself referencing an appeal.  In sum, there is nothing but petitioner's own barebones, self-serving allegation, which alone is insufficient to meet his burden of proof that counsel ever in fact made such a statement.

Further, in any event, even if petitioner had presented any such evidence, he cannot establish the diligence necessary to support a grant of equitable tolling.  It is true that a petitioner need not show that he exercised the "maximum feasible diligence"; rather, "[t]he diligence required for equitable tolling purposes is *reasonable* diligence."  Holland, 560 U.S. at 563

---

[13] Rec. Doc. 4-1, p. 5.

(emphasis added; quotation marks omitted).  However, the Court cannot say that petitioner exercised even reasonable diligence for the following reasons.

As noted, petitioner's trial court proceedings concluded on August 15, 2013.  He then waited several *years* before he even made an inquiry as to the status of the purported appeal.  During that period, petitioner, who apparently had not received any correspondence or other documentation indicating that an appeal had actually been filed, sent no inquiries about the status of his appeal to the Court of Appeal or even to his counsel.  At some unspecified time, presumably shortly before he filed his state post-conviction application requesting an out-of-time appeal in May of 2016, he finally made his first inquiry, writing to the Louisiana Appellate Project to check on the status of his case.

Petitioner attempts to justify that delay by stating that he knew the appeal process could be lengthy, so "he decided to take his trial counsel at his word and exercise patience."[14]  Even accepting as true the maxim that patience is a virtue, the Court nevertheless finds that it was clearly unreasonable for petitioner to wait *years* before attempting verify that an appeal was actually filed or making any inquiry to check the status of the purported appeal.  See, e.g., Stroman v. Thaler, 603 F.3d 299, 302 (5th Cir. 2010) (finding that an eighteen-month wait between inquiries as to the status of an application was not sufficiently diligent for equitable tolling); Lewis v. Cockrell, No. 00-50811, 2001 WL 1267701, at *3 (5th Cir. Aug. 3, 2001) ("Lewis concedes that he waited approximately two and one-half years after filing his PDR to inquire about its status.  Obviously, this is *not* the diligent pursuit of habeas relief. … Lewis should have inquired at a far earlier date about the PDR's status.  One cannot remain idle for such a length of time and then legitimately claim entitlement to equitable relief.").  As United States Magistrate Judge Sally Shushan observed

---

[14] Rec. Doc. 41-1, p. 20.

in a Report and Recommendation adopted by United States District Judge Helen "Ginger" Berrigan:

> It is clear that diligence is required of one desiring equitable tolling. See, e.g., Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999). Further, while this Court realizes that incarcerated persons face more obstacles than free citizens in making routine status checks on pending court matters, even prisoners are not absolved of *all* responsibility to track their litigation diligently. Accordingly, a *habeas* petitioner should not be allowed to avoid the AEDPA's statute of limitations indefinitely by making an unreasonable decision to forego even minimal efforts to check the status of his litigation with some regularity. In light of the relative brevity of the AEDPA's statute of limitations and the harsh consequences of filing after its expiration, it would seem that even the most lackadaisical prisoners would show enough concern to check the status of their pending matters with some degree of regularity.

Smith v. Terrell, Civ. Action No. 07-9449, 2009 WL 2139697, at *4 (E.D. La. July 13, 2009). Petitioner's wait of more than two and one-half years before making his first inquiry simply is not indicative of reasonable diligence.

For all of these reasons, the Court finds that petitioner has to establish that equitable tolling is warranted in this case.

Lastly, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by making a convincing claim of "actual innocence" under McQuiggin v. Perkins, 569 U.S. 383 (2013). In Perkins, the United States Supreme Court held:

> This case concerns the "actual innocence" gateway to federal habeas review applied in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and further explained in House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). In those cases, a convincing showing of actual innocence enabled habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. Here, the question arises in the context of 28 U.S.C. § 2244(d)(1), the statute of limitations on federal habeas petitions prescribed in the Antiterrorism and Effective Death Penalty Act of 1996. Specifically, ... can the time bar be overcome by a convincing showing that [the petitioner] committed no crime?
> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or, as in this case, expiration of the statute of limitations. We

      caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329, 115 S.Ct. 851; see House, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the Schlup standard is "demanding" and seldom met).

Perkins, 569 U.S. at 386. Here, petitioner has not invoked Perkins. Moreover, in any event, he has not claimed that he is actually innocent of the crimes of which he stands convicted, much less presented any new evidence in support of such a claim.

      Because petitioner is not entitled to statutory tolling, and because he has not established that equitable tolling is warranted or made a convincing claim of actual innocence, his federal application for habeas corpus relief had to be filed no later than **September 16, 2014**, in order to be timely under Subsection A. His application was not filed until on or after **February 18, 2018**, and, therefore, it is untimely under that Subsection.

      Accordingly, in that Subsections B and C do not apply, and in that petitioner's application would be untimely under Subsection A, his application may proceed only if it is rendered timely by a delayed commencement of the statute of limitations under Subsection D.

      As noted, under Subsection D, the commencement of the statute of limitations is delayed until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Therefore, "the relevant question here is how long a duly diligent prisoner would take to discover that his lawyer had not filed a notice of appeal." Ryan v. United States, 657 F.3d 604, 607 (7th Cir. 2011).[15]

---

[15] Ryan and United States v. Rodriguez, 858 F.3d 960 (5th Cir. 2017), which is discussed *infra*, involve the application of 28 U.S.C. § 2255(f)(4) with respect to motions filed pursuant to 28 U.S.C. § 2255. However, § 2255(f)(4) is an analogue to § 2244(d)(1)(D), and, therefore, the cases are properly considered in the Court's analysis. See, e.g., Rodriguez, 858 F.3d at 962 & n.1; Wilder v. United States, Civ. Action No. 10-0997 & Crim. No. 03-72, 2011 WL 3444178, at *7 n.5 (W.D. Pa. Aug. 8, 2011) (observing that, while § 2255(f)(4) uses the phrase "factual predicate of the claim" rather than the phrase "facts supporting the claim" used in § 2244(d)(1)(D), courts do "not distinguish between the provisions").

In considering that question, the United States Seventh Circuit Court of Appeals reviewed the jurisprudence and concluded: "No rule of thumb emerges from the cases on how long prisoners may take to discover their lawyers' missteps, and we hesitate to pick a magic number." Id. While declining to find a two-month delay (the period of time at issue in that case) was unreasonable, the Seventh Circuit nevertheless noted that "at some point, the reasonably diligent prisoner will contact counsel, ask how the appeal is going, and either receive an honest response or infer from counsel's silence that something is amiss (and then follow up with the court)." Id. at 608.

Further guidance in this Circuit can be found in United States v. Rodriguez, 858 F.3d 960 (5th Cir. 2017). In that case, Rodriguez alleged that his attorney had agreed to file an appeal but then failed to so. In considering whether Rodriguez's delay in discovering that no appeal was actually filed rendered his § 2255 motion timely, the Fifth Circuit held:

> We conclude that it does not. We have held that "attorney abandonment ... does not, by itself, excuse [a] petitioner from his duty of diligence." Manning v. Epps, 688 F.3d 177, 184 n.2 (5th Cir. 2012). In other words, "[c]omplete inactivity in the face of no communication from counsel does not constitute diligence." Id. at 186. Here, Rodriguez's allegations before the district court show, at most, only attorney abandonment and not diligence in the face of same. … Rodriguez waited until October 3, 2013, *almost a year and three months after the fourteen-day period for filing a notice of appeal had expired*, to send a letter to the district court requesting certain documents. Diligence under § 2255(f)(4) requires more. The facts supporting Rodriguez's claim – that [counsel] was ineffective for failing to file Rodriguez's appeal – could have been discovered through the exercise of due diligence anytime during the proceeding months. Rodriguez did not need over a year to uncover that [counsel] had not appealed.

Rodriguez, 858 F.3d at 963-64 (emphasis added; footnotes and citation omitted).

Rodriguez therefore holds that a prisoner, by exercising due diligence, should normally be able to discover that his counsel did not file a promised appeal in no more than *fifteen months* after the period for filing such an appeal expired. Here, as explained *supra*, the deadline for filing a direct appeal in petitioner's case was September 16, 2013. Accordingly, this Court will assume

10

that the factual predicate of petitioner's claim could have been discovered through due diligence within no more than fifteen months; in other words, by December 16, 2014. If the limitations period commenced on that date, then petitioner would have had only until **December 16, 2015**, either (1) to file a state post-conviction application which tolled the limitations period pursuant to § 2244(d)(2) or (2) to file his federal application pursuant to § 2244(d)(1)(D). However, as noted *supra*, he did not file a state post-conviction application until **May 22, 2016**, and he did not file this federal application until on or after **February 18, 2018**. Therefore, even if the Court assumes for the purposes of this decision that § 2244(d)(1)(D) applies in the instant case, petitioner's federal application is still untimely.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Jamal Westley be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-eighth day of May, 2019.

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**